BETTY FORTUNE, INDIVIDUALLY AND DALE FORTUNE, A MINOR BY HIS GUARDIAN AD LITEM, BETTY FORTUNE v. FIRST UNION NATIONAL BANK, A CORPORATION AND AS EXECUTOR AND TRUSTEE OF THE ROBERT L. FORTUNE ESTATE AND TRUST

No. 552PA87

(Filed 7 September 1988)

1. **Trusts § 11— discretionary trust—action by beneficiary against executor or trustee for mismanagement**

A trust beneficiary may sue an executor or trustee for damages if the executor or trustee has mismanaged the property he holds in a fiduciary capacity even though the executor or trustee is under no duty to pay money immediately and unconditionally to the beneficiary.

Fortune v. First Union Nat. Bank

**2. Trusts § 11— discretionary trust—beneficiary's action against executor-trustee for mismanagement—proof of damages with sufficient certainty**

Damages to the beneficiary of a family trust (testator's son) from mismanagement of the trust assets by defendant executor-trustee could be proved with sufficient certainty to permit the jury to reach a reasonable conclusion where the testator's will created a marital deduction trust with his wife as sole beneficiary and a family trust giving the trustee the absolute discretion to determine whether, and to what extent, to distribute trust income or corpus to the beneficiaries; at the wife's death, the corpus of the family trust was to go to the son or to his surviving issue; there was evidence that at least $290,000 could have been put in the family trust and substantially more in the marital deduction trust but that the assets were depleted by defendant and each trust was funded with only one dollar; the jury could reasonably find that if the trustee, in its discretion, determined to invade the principal of either trust for the benefit of the wife, it would first invade the marital deduction trust; the jury would be able to determine what would have been the need of the wife to have a part of the income from the family trust by taking into account her income from the marital deduction trust as well as other resources she may have; the jury could thus determine what the income to the son from the family trust would have been or what would have been accumulated for his eventual benefit; and the value of the son's remainder interest in the trust could be calculated by the use of the mortuary tables in N.C.G.S. § 8-46 with the help of an expert witness if necessary.

**3. Appeal and Error § 62.2— new trial on damage issue only**

A new trial will be awarded on the damage issue only in this action by a trust beneficiary against an executor-trustee for breach of fiduciary duty where the damage issue was not properly presented to the jury because of a mistake as to the beneficiary's interest in the trust, the negligence issue was distinct from the damage issue, and the error in assessing damages did not affect the entire verdict.

Justice MEYER dissenting.

Chief Justice EXUM and Justice WHICHARD join in this dissenting opinion.

ON discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 87 N.C. App. 1, 359 S.E. 2d 801 (1987), modifying a judgment of the superior court. Heard in the Supreme Court 10 May 1988.

This is an action against the executor and trustee under the will of Robert L. Fortune for breach of fiduciary duties. The plaintiff Betty Fortune brought the action individually and as guardian ad litem of her son Dale Fortune. Prior to the trial the court granted a motion for summary judgment against Betty Fortune on all her claims except her claim for an accounting. The individual claim of Betty Fortune is not involved in this appeal. There

was evidence at trial which showed Robert L. Fortune created two trusts by his will. One was a marital deduction trust with his wife Betty Fortune as sole beneficiary. The other trust was denominated a family trust which provided the trustee in its "absolute discretion" could accumulate all or any part of trust income or distribute it to the testator's wife Betty Fortune or his son Dale Fortune. The trustee also in its "uncontrolled discretion," had the power to use the principal of the trust for either beneficiary as it "shall deem needful or desirable for the beneficiary's comfortable support and maintenance and education and for the medical, surgical, hospital, or other institutional care of such beneficiary." At the death of Betty Fortune the corpus of the trust was to go to Dale Fortune if he survived his mother. If Dale Fortune did not survive his mother the corpus of the trust was to be delivered to the surviving issue of Dale Fortune.

There was evidence that the defendant was negligent in the manner in which it managed the estate. The assets were depleted and each trust was funded with one dollar only. The court granted the defendant's motion to dismiss the claim for punitive damages and denied the motion to dismiss the claim based on negligence. The jury found that Dale Fortune had been damaged in the amount of $413,744.76 by the negligence of the defendant. The court entered a judgment for this amount in favor of Dale Fortune. The Court of Appeals found no error in the trial of the case but held that the damages to Dale Fortune were too speculative to be proved. The Court of Appeals ordered that the judgment of the superior court be amended to award the damages to the trust. The Court of Appeals held that the plaintiff had not properly brought forward his assignment of error to the dismissal of his claim for punitive damages.

This Court allowed the defendant's petition for discretionary review on 12 February 1988.

*McLeod, Senter & Winesette, P.A., by Joe McLeod, for plaintiff appellees.*

*J. Frank Huskins, Francis C. Clark, Staff Attorney for First Union National Bank, and Maupin, Taylor, Ellis & Adams, P.A., by R. Stephen Camp and M. Elizabeth Davenport, for defendant appellant.*

WEBB, Justice.

The defendant argues that the Court of Appeals erred in two respects. It contends first that the Court of Appeals was correct in holding Dale Fortune could not prove any damage but was in error in ordering the damages to be awarded to the trust. The defendant also argues that there was insufficient evidence to support the amount of damages awarded.

[1] We do not pass on the defendant's argument that the damages may not be transferred to the trust because we hold that in this case Dale Fortune is entitled to bring the action in his individual capacity. Restatement (Second) of Trusts, § 198(1) (1979) says:

> If the trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment.

The defendant, relying on this section of the Restatement, contends that a beneficiary may not maintain an action for a breach of duty to the trust unless the trustee is under a duty to pay money immediately and unconditionally to the beneficiary. Illustration d. of Section 198 says that the beneficiary's remedy in such a case is a suit in equity to compel the trustee to restore the money. Our Court of Appeals in *Ingle v. Allen*, 69 N.C. App. 192, 317 S.E. 2d 1 (1984), allowed an action for damages by a beneficiary of a trust against the executors and trustees under a will. Such actions have been allowed in other jurisdictions. *See Work v. County National Bank and Trust Co. of Santa Barbara*, 4 Cal. 2d 532, 51 P. 2d 90 (1935); *Hoppe v. Hoppe*, 370 So. 2d 374 (Fla. Dist. Ct. App. 1978); *First City Nat. Bank v. Haynes*, 614 S.W. 2d 605 (Tex. Civ. App. 1981); 76 Am. Jur. 2d *Trusts*, § 645 at 854 (1975). We see no reason why a beneficiary may not sue an executor or trustee for damages if the executor or trustee has mismanaged the property he holds in a fiduciary capacity. We believe that a beneficiary who has been damaged by the negligence of a fiduciary should have this remedy in addition to any other remedy he may have. We hold that such a claim may be maintained.

As we read the Court of Appeals' opinion, it does not hold that a claim for money damages may not be maintained by a bene-

ficiary against a fiduciary. It holds that in this case Dale Fortune's interest in the trust, because it is a discretionary interest, is too speculative to be measured. For this reason, the Court of Appeals felt damages could not be proved with reasonable certainty. In proving damages, "absolute certainty is not required but evidence of damages must be sufficiently specific and complete to permit the jury to arrive at a reasonable conclusion." *Service Co. v. Sales Co.*, 259 N.C. 400, 417, 131 S.E. 2d 9, 22 (1963); *Tillis v. Cotton Mills*, 251 N.C. 359, 365, 111 S.E. 2d 606, 612 (1959); *Thrower v. Dairy Products*, 249 N.C. 109, 112, 105 S.E. 2d 428, 431 (1958). Damages may be recovered if a plaintiff proves the extent of the harm and the amount of money representing adequate compensation with as much certainty as the nature of the tort and the circumstances permit. Restatement (Second) of Torts, § 912 (1977).

[2] We hold that in this case Dale Fortune's damages may be proved with sufficient certainty that a jury may determine them. The value of the assets which would have been placed in the two trusts may be determined by the value of Robert Fortune's estate. There was evidence that at least $290,000 could have been put in the family trust and substantially more in the marital deduction trust. It is in this light that we must look at the discretionary power of the trustee to pay all the income and principal of the family trust to Betty Fortune. If the two trusts had been fully funded, Betty Fortune would have had the marital deduction trust of several hundred thousand dollars from which she would have received the income and been entitled to have the trustee invade the principal for her if necessary. The jury could reasonably find that if the trustee, in its discretion, determined to invade the principal of either trust for the benefit of Betty Fortune, it would invade first the marital deduction trust. In such a case the possibility of invading the corpus of the family trust would be remote. A jury should be able to determine what would have been the need of Betty Fortune to have a part of the income from the family trust, taking into account her income from the marital deduction trust as well as other resources she may have. A jury could thus determine with reasonable certainty what the income to Dale Fortune from the family trust would be or what would have been accumulated for his eventual benefit. The value of Dale Fortune's remainder interest in the trust may be calculated by

use of the mortuary tables in N.C.G.S. § 8-46 with the help of an expert witness if necessary. We hold that under the circumstances of this case the evidence may be made specific enough to allow the jury to reach a reasonable conclusion.

[3] We agree with the defendant that the damage issue was not properly presented to the jury. The evidence as to Dale Fortune's interest in the trust and the charge of the court on this feature of the case was premised on the theory that Dale Fortune had a one-half interest in the family trust. This is not correct. Dale Fortune's interest in the trust must be calculated by what the jury could reasonably believe he would receive from the trust, taking into account that he had a remainder interest and that he may have received a part, all, or none of the income and corpus as the circumstances may have developed.

We hold there must be a new trial because of error in submitting the damage issue. It is within the discretion of this Court whether to grant a new trial on one issue. A new trial as to damages only should be ordered if the damage issue is separate and distinct from the other issues and the new trial can be had without danger of complication with other matters in the case. It must be clear that the error in assessing damages did not affect the entire verdict. If it appears the damages awarded were from a compromise verdict, a new trial on damages alone should not be ordered. *Weyerhaeuser Co. v. Supply Co.*, 292 N.C. 557, 234 S.E. 2d 605 (1977); *Robertson v. Stanley*, 285 N.C. 561, 206 S.E. 2d 190 (1974). In this case it does not appear that there was a compromise verdict. The plaintiff was awarded substantially that for which he asked. We do not believe the error in assessing damages affected the entire verdict. The negligence issue in this case was distinct from the damage issue. We hold that this is a proper case for remand for a trial on the damage issue only.

In its assignment of error as to the evidence to support the award of damages, the defendant does not contend there was no evidence to support the award, but that the evidence was not sufficient to support an award of the size which was granted. Because we have ordered a new trial for damages, we do not consider this argument. The evidence will be different at a new trial.

The appellee has asked us to consider in our discretion the question of punitive damages which the Court of Appeals held had not been brought forward for review. This we decline to do.

We reverse the Court of Appeals and remand for a further remand for proceedings consistent with this opinion.

Reversed and remanded.

Justice MEYER dissenting.

The Court of Appeals, having properly concluded that the minor plaintiff, Dale Fortune, could not recover individually based on the trial court's erroneous determination that he was a joint life tenant in the trusts, allowed the *amount* of the jury verdict in his favor to stand. In its obvious attempt to reach what it considered a just result, that court advanced a different theory for a cause of action on behalf of the trusts, found that the trusts had suffered the damages in the same amount of $413,744.76 that the jury had awarded to Dale Fortune, and directed that judgment be entered in favor of the trusts. Because this case was neither argued nor defended on the basis of liability or damages to the trusts but only to Dale Fortune individually, the Court of Appeals acted beyond the scope of its authority in transferring the jury award to the trusts. Pursuant to the division of jurisdiction among the courts of this state, the Court of Appeals is intended to be a court of review and has no jurisdiction to determine facts not conceded or conclusively established at the trial court level. "[T]he Court of Appeals *[has] jurisdiction to review* upon appeal decisions of the several courts of the General Court of Justice *. . . upon matters of law or legal inference . . . .*" N.C.G.S. § 7A-26 (1967) (emphasis added). *See Putnam v. Lincoln Safe Deposit Co.*, 191 N.Y. 166, 83 N.E. 789 (1908). When a case is governed on appeal by a theory different from the one presented at trial, the parties have not been afforded notice on which to present or defend their interests. A reviewing court must decide a case on appeal under the same theory presented at trial. *Feibus & Co. v. Construction Co.*, 301 N.C. 294, 297-302, 271 S.E. 2d 385, 388-90 (1980); *State v. Brooks*, 275 N.C. 175, 179, 166 S.E. 2d 70, 72 (1969); *In re Drainage*, 257 N.C. 337, 343, 125 S.E. 2d 908, 912 (1962).

Plaintiff Dale Fortune's interest in the estate is limited to the provisions of the residuary trust created by the will of Robert L. Fortune and constitutes a mere expectancy. The residuary trust provides that, during the life of plaintiff's mother, the trustee in its "absolute discretion" can accumulate all or any part of the income of the trust or distribute all or any part of it to plaintiff's mother, to plaintiff, or to any issue of plaintiff if he should die before his mother. The trustee is also given the power to distribute the principal of the trust in the same discretionary manner. At the termination of the trust, its assets are to be distributed to Dale Fortune *if then living*, otherwise to his surviving issue or, if none, to the heirs of Robert L. Fortune under the provisions of chapter 29 of the North Carolina General Statutes (the North Carolina Intestate Succession Act).

The issues submitted to the jury were erroneous. They allowed a recovery, not to the trust, but to Dale Fortune individually. Pursuant to the trial court's instructions, a jury awarded damages of $413,744.76 directly to him. By awarding Dale Fortune damages now, before he is entitled to receive the trust assets, assuming he ever will be so entitled, the court ignored the terms of the trusts created by Mr. Fortune's will. This it may not do. A court's limited power to modify the terms of a trust may not be exercised for the purpose of destroying the terms of the trust or defeating the purpose of the donor. *Penick v. Bank*, 218 N.C. 686, 12 S.E. 2d 253 (1940). I disagree in the strongest possible way with the majority's conclusion that plaintiff was entitled to sue and recover his individual damages caused by defendant's breach of fiduciary duty, and I therefore dissent.

Dale Fortune has no "right" to the income or to the principal while his mother lives — he has only a mere expectancy. A beneficiary may not maintain an action at law to recover individually for a breach of duty to the trust unless "the trustee is under a duty to pay money immediately and unconditionally to the beneficiary." Restatement (Second) of Trusts § 198 (1959).

> It is well settled that a *cestui que trust* cannot bring an action at law against a trustee to recover for money had and received while the trust is still open; but when the trust has been closed and settled, the amount due the *cestui que trust* established and made certain, and nothing remains to be done but to pay over money, such an action may be maintained.

*Johnson v. Johnson*, 120 Mass. 465, 466 (1876). *See* Restatement (Second) of Trusts § 198 and comment d at 436 (1959) (if trustee misappropriates money which it is his duty to continue to hold in an active trust, the beneficiary, not being entitled to immediate payment, cannot maintain an action at law against trustee). The majority cites *Ingle v. Allen*, 69 N.C. App. 192, 317 S.E. 2d 1 (1984), and several cases from other jurisdictions to support its assertion that a beneficiary who has been damaged by the negligence of a fiduciary should have the remedy of suing an executor or trustee for damages in addition to any other remedy he may have. These cases can readily be distinguished from the case *sub judice* when one examines the actions of the trustee which led to the suit. It has been a longstanding rule that the trustee must perform an affirmative act in repudiation of the trust in order for the individual beneficiaries to be entitled to a cause of action.

> As long as the relation of cestui que trust and trustee is admitted to exist, and there is no assertion of adverse claim or ownership by the trustee, no refusal or demand to comply with the terms of the trust, and no repudiation or disavowal of the trust, no cause of action rests in the cestui que trust.

76 Am. Jur. 2d *Trusts* § 589, at 796-97 (1975).

A beneficiary with no immediate and unconditional right to trust funds may only maintain an equitable action to compel the trustee to redress the breach of trust. Restatement (Second) of Trusts §§ 197, 198 and comment c at 436 (1959). The rationale behind this rule is that a beneficiary with no immediate and unconditional right to trust proceeds cannot establish individual damages with any degree of specificity. When pecuniary damages are sought, the plaintiff must present evidence of their existence and extent and some data from which they may be computed. *Norwood v. Carter*, 242 N.C. 152, 87 S.E. 2d 2 (1955); *The Asheville School v. Ward Construction, Inc.*, 78 N.C. App. 594, 337 S.E. 2d 659 (1985), *disc. rev. denied*, 316 N.C. 385, 342 S.E. 2d 890 (1986).

Plaintiff Dale Fortune was not a proper party to bring suit and could not recover individually against defendant trustee under the circumstances presented here. The Court of Appeals correctly recognized that Dale Fortune could not recover damages individually, but chose the inappropriate remedy of awarding his

individual recovery to the residuary trust created under the will of Robert L. Fortune. The majority of this Court erroneously holds in part that Dale Fortune was entitled to sue individually for damages caused by trustee's breach of fiduciary duty and further holds that, on retrial of the damages issue, his individual damages may be proved with sufficient certainty for a jury's determination. I disagree with both conclusions. If Dale Fortune, without removal of the bank as trustee, is permitted to sue individually for damages, a conflict of interest continues to exist. The bank continues as trustee, and its interest as such should be to recover the losses for all possible beneficiaries of the trusts. It is at the same time executor of the estate, in which role it will contend that it is not liable for any damages to anyone. Likewise, Dale Fortune, while acting as plaintiff, would also have his interest as one of the beneficiaries of the trusts represented by defendant bank in its role as trustee. The majority's decision makes no provision for the resolution of this conflict of interest.

As a general rule the damages resulting from a breach of trust by a trustee are to be paid into the trust fund, not directly to the trust beneficiaries:

A [trustee's] failure to perform any of the duties placed upon him by common law, statute or trust instrument, if loss is caused thereby, will give the beneficiaries, a co-trustee or a successor trustee a right to secure from the court of equity a decree that the wrongdoing trustee pay *into the trust fund* the amount of damages suffered.

G. Bogert, *Trusts* § 157 (6th ed. 1987) (emphasis added).

While the majority correctly concludes that the damages issue was not properly presented to the jury at the trial court level, it erroneously holds that plaintiff Dale Fortune's individual damages may, on retrial, be proved with sufficient certainty that a jury may determine them. Dale Fortune clearly sought individual recovery for monetary damages based on defendant's alleged breaches of fiduciary duty as executor of the estate. The case was tried and argued by both parties on the theory that Dale Fortune was entitled to an individual recovery, and the issues submitted to the jury were so formulated. It is my belief that on retrial Dale Fortune cannot provide evidence of damages to him individually because, by the terms of the trust, damages to his expectancy in

the residuary trust cannot be actuarially computed. Dale Fortune has the burden of proving damage to his interest under the residuary trust in order to recover compensatory damages. "The burden is always upon the complaining party to establish by evidence such facts as will furnish a basis for their assessment, according to some definite and legal rule." *Norwood v. Carter*, 242 N.C. 152, 156, 87 S.E. 2d 2, 5. Dale Fortune cannot present evidence tending to show that the trustee will ever exercise its *discretion* to pay out benefits to him during his lifetime or, if so, in what amount. Nor can he produce actuarial evidence to establish the range of possibilities under which his remainder would vest or the value of his interest when it would vest. Neither N.C.G.S. § 8-46 (mortuary tables containing life expectancies) nor N.C.G.S. § 8-47 (annuity tables containing annuity valuation factors) would be of assistance in proving when the trustee might exercise its discretion.

Dale Fortune will not be able to establish values with any degree of accuracy because of the nature of his interest under the provisions of the residuary trust, which is merely speculative at best. His interest in the principal at the termination of the residuary trust upon his mother's death is not readily ascertainable because it is a mere expectancy. His interest cannot be valued until the death of his mother, if he survives her. *Brown v. Guthery*, 190 N.C. 822, 130 S.E. 836 (1925); 2 N. Wiggins, *Wills and Administration of Estates in North Carolina* § 280 (2d ed. 1983). His income interest in the residuary trust is speculative because his interest in the trust *income* is in the uncontrolled discretion of the trustee. The same is true of his interest in the *principal* of the residuary trust during the trust's existence. By definition, under a discretionary trust the trustee has discretion whether, and to what extent, to apply trust income or principal to, or for the benefit of, the beneficiaries. *Lineback v. Stout*, 79 N.C. App. 292, 339 S.E. 2d 103 (1986); N.C.G.S. § 36A-115(b)(1) (1979).

In its opinion, the majority asserts that a jury should be able to determine what would have been the need of Betty Fortune in the past and what it will be in the future to have a part of the income from the residuary trust, taking into account her income from the marital trust (which is at the present time unfunded) as well as other resources she may have. The majority fails to look beyond Betty Fortune's immediate needs, however, or to consider

the very real possibility that she could, for example, suffer an extensive long-term illness or even a catastrophic illness or disease requiring untold amounts of care and the accompanying financial demands which would conceivably cause the trustee to deplete the assets of both trusts for her benefit. Because of such contingencies, a jury is not capable of determining with any degree of accuracy what the income to Dale Fortune from the family trust will be or what will be accumulated and remain for his eventual benefit. Dale Fortune cannot establish the value of his interest in the residuary trust or his damages from losses incurred by the trust. Damages which are uncertain and speculative may not be recovered. Similarly, where there is no evidence as to the amount of damage, or where the amount is extremely uncertain, recovery should be denied. *Midgett v. Highway Commission*, 265 N.C. 373, 378, 144 S.E. 2d 121, 125 (1965); E. Hightower, *North Carolina Law of Damages* §§ 2-5, 2-7 (1981). Even if Dale Fortune were a proper party, because of the contingencies referred to above, I conclude that he cannot carry his burden of proof on the issue of individual damages.

The trustee is charged with a responsibility to the beneficiaries to use reasonable care and skill to preserve the trust property. Accordingly, it is the duty of the trustee to bring such actions as are reasonably necessary for the protection of the trust estate. *Id.* If a third party has covenanted to transfer property to a trust, it is the trustee's duty to take reasonable steps to enforce such a covenant. Restatement (Second) of Trusts § 177, at 383 (1959).

It is the *trustee's* duty to preserve and administer the trusts, including the duty to bring suit against the executor of the estate for wasting assets which should go to the trusts. At least by the time the dispute concerning the sale of the automobile dealerships arose, the conflict of interest in defendant bank serving as both executor of the estate and trustee of the trusts became obvious. Either the widow (beneficiary of one trust) or Dale Fortune (having an expectancy in the other trust) could have and should have sought the discharge of defendant bank as trustee and the appointment of a substitute trustee to bring this action to recover as against defendant bank as executor for damages to both trusts. As the case is going back for retrial, this can still be accomplished, and I believe it should be so ordered by this Court.

There are yet other significant reasons for having this lawsuit prosecuted by a substitute trustee rather than by Dale Fortune. First, a suit filed on behalf of the beneficiaries and pursued by a substitute trustee would not only permit the preservation of Dale Fortune's expectancy in the assets recovered as damages, but would also enable the trustee to recover on behalf of the trusts for the widow's benefit. As a result of the substitution, the entire loss incurred by both trusts would be recoverable. Although, as the majority points out, the individual claim of the widow is not before us, on retrial of this action wherein a substitute trustee is the plaintiff, the widow's damages under the terms of the trusts would indeed be recoverable and she would not then be barred from receiving them. The fact that the trusts were never funded would not prohibit the widow or any other beneficiary from recovery. Restatement (Second) of Trusts § 176, at 382 (1959).

In the case *sub judice*, the bank is to this day continuing to act as both trustee and executor. The statute of limitations is tolled while the executor of the estate and the trustee of the companion trust are the same entity, and will therefore not begin to run in this cause of action until the conflict of interest of the bank is cured.

> It is an underlying principle in the application of the statute of limitations that before it can begin to run there must be some one in existence by whom, and a different person against whom, the claim may be enforced. . . . It is the general rule that where one person represents both sides of conflicting claims the statute does not run.

*Bremer v. Williams,* 210 Mass. 256, 258, 96 N.E. 687, 688 (1911). *See also Yager v. Liberty Royalties Corp.,* 123 F. 2d 44 (1941); G. Bogert, *Trusts and Trustees* § 951 (2d ed. 1982). It follows from the above analysis that neither Dale Fortune nor his mother would be barred from obtaining damages through the trust because the bank is guilty of self-dealing and is therefore proscribed from claiming lapse of time as a defense. Second, assuming arguendo that Dale Fortune's individual damages could be ascertained, the amount of these damages would be minuscule in comparison to the panoply of damages available if the trustee were the plaintiff. It is thus not in Dale Fortune's best interest to bring

suit for his individual damages. He would be far better off to have an expectancy in the significantly larger recovery available to a substitute trustee.

This action should be remanded for the removal of defendant bank as trustee, the appointment of a substitute trustee, and a new trial on *all* issues. By suggesting in this dissenting opinion how I believe this lawsuit should be prosecuted, I do not mean to express an opinion as to whether any defenses are or are not now available to the defendant bank should a new complaint be filed by a properly substituted trustee.

Chief Justice EXUM and Justice WHICHARD join in this dissenting opinion.